UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRY J. BASKIN,

          Petitioner,

    v.

E. VALENZUELA,

          Respondent.

No.  2:14-cv-0685 TLN DAD P

FINDINGS AND RECOMMENDATIONS

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him in 2011 in the Sacramento County Superior Court on charges of furnishing tar heroin and/or methamphetamine, in violation of California Health & Safety Code § 11352(a); and possession of methamphetamine, in violation of California Health & Safety Code § 11377(a).  He seeks federal habeas relief on the following grounds:  (1) the warrantless search of his home violated his rights under the Fourth Amendment; and (2) his appellate counsel provided him ineffective assistance.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

**I.  Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

following factual summary:

Following a jury trial, defendant Terry Jerome Baskin was convicted of furnishing tar heroin and/or methamphetamine (Health & Saf. Code, § 11352, subd. (a)) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The trial court found true a strike allegation and sentenced defendant to nine years four months in state prison.

On appeal, defendant contends 1) the trial court erred in denying his motion to suppress the fruits of the warrantless entry into his apartment and 2) there is an error in the abstract. We order a correction to the abstract of judgment and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant challenged the legality of the entry into his apartment at his preliminary hearing. The magistrate denied his motion to suppress, finding there were exigent circumstances that justified the entry. Prior to trial, defendant renewed his motion to suppress pursuant to Penal Code section 1538.5, subdivision (i).FN1 No additional evidence was presented in the trial court. The trial court denied defendant's motion, finding that the community caretaking exception to the warrant requirement applied. We take the following facts from the combined suppression motion and preliminary hearing.

> FN1. Penal Code section 1538.5, subdivision (i) provides in pertinent part: "If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing . . . , the defendant shall have the right to renew or make the motion at a special hearing relating to the validity of the search or seizure . . . . If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence that could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing . . . . The court shall base its ruling on all evidence presented at the special hearing . . . ."

On December 31, 2009, at 7:39 a.m., Sacramento County Sheriff's Deputy Todd Hengel responded to a 911 call concerning an abandoned infant. The caller reported that the infant's mother had been gone approximately one hour. Deputy Hengel arrived at the location at 7:55 a.m. At that time, he met the caller, Randy Shutler, and his girlfriend, Kimberlie Higginbothom, who had a five-week-old baby with them. Shutler told Deputy Hengel that he had been awakened at 4:30 a.m. by the sound of a woman crying outside his apartment. He and Higginbothom went outside to investigate and found a woman later identified as Melissa Cekic, crying

hysterically and holding an infant.  Higginbothom took Cekic back to Cekic's apartment.

Higginbothom talked to Cekic for about 45 minutes.  Cekic then asked if she could get a ride to another apartment to retrieve a wallet she left the previous night.  Shutler and Higginbothom agreed and drove her there.  Upon their arrival, Cekic told them she would be back in a couple of minutes and then left the infant with them and entered the complex.  When Cekic did not return after 20 to 25 minutes, Shutler went to look for her inside the complex, but did not find her.

After another 25 to 30 minutes, Shutler searched for Cekic again. At this point, Cekic had been gone about 50 minutes.  During this search, Shutler contacted a woman later identified as Marie Mayfield.  Shutler described Cekic to Mayfield, who said that the woman he described lived in apartment 4 and had gone in there. Shutler knocked on the door of apartment 4 and got no response. Mayfield told him the residents would not answer the door because they did not want to go to prison.  Shutler then called the police.

Shutler pointed out Mayfield to Deputy Hengel.  Deputy Hengel made contact with Mayfield.  Mayfield denied that she had ever spoken to Shutler and denied seeing anyone go into apartment 4. She did say that she was friends with defendant, who lived in apartment 4.  Deputy Hengel ran a warrant check for defendant, and learned he had two outstanding misdemeanor warrants.

Deputy Hengel knocked on the door of apartment 4 and identified himself as a police officer.  No one answered, so Deputy Hengel got a pass key from the manager and entered the apartment, where he found defendant and Cekic in the bathroom.  Deputy Hengel searched defendant and found syringes and methamphetamine in his pockets.  Another deputy found a bottle cap containing a brown liquid and a piece of cotton on the bathroom counter, and on the bathroom floor, he found a knit glove containing two pieces of black tar heroin; one weighed approximately 12 grams, and the other weighed approximately 13 grams.

People v. Baskin, Case No. C068583, 2012 WL 5397110, at *1-2 (Cal. App. 3d Dist. Nov. 6, 2012).

After the California Court of Appeal affirmed his judgment of conviction on appeal, petitioner filed a petition for review in the California Supreme Court.  (Resp't's Lod. Doc. 8.) That petition was summarily denied.  (Id.)  Petitioner then filed a petition for a writ of habeas corpus in the Sacramento County Superior Court, claiming that hearsay statements were improperly admitted into evidence at his trial and that the prosecutor committed misconduct. (Resp't's Lod. Doc. 9.)   Citing the decisions in In re Dixon, 41 Cal.2d 756, 759 (1953) and In re

3

1    Harris, 5 Cal.4th 813, 828 (1993), the Sacramento County Superior Court denied habeas relief on

2    these claims based upon the procedural ground that they could have been, but were not, raised on

3    appeal by petitioner.  (Id.)

4          Petitioner subsequently filed a petition for a writ of habeas corpus in the California Court

5    of Appeal, claiming that his appellate counsel rendered ineffective assistance in failing to raise

6    several arguments on appeal.  (Resp't's Lod. Doc. 10.)  That petition was summarily denied.  (Id.)

7    Finally, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court,

8    raising the same claims of ineffective assistance of appellate counsel.  (Resp't's Lod. Doc. 11.)

9    That petition was also summarily denied.  (Id.)

10         Petitioner filed his federal habeas petition in this court on March 13, 2014.  Respondent

11   filed an answer on June 9, 2014, and petitioner filed a traverse on July 21, 2014.

12   **II.  Standards of Review Applicable to Habeas Corpus Claims**

13         An application for a writ of habeas corpus by a person in custody under a judgment of a

14   state court can be granted only for violations of the Constitution or laws of the United States.  28

15   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

16   application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire,

17   502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

18         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

19   corpus relief:

20               An application for a writ of habeas corpus on behalf of a
     person in custody pursuant to the judgment of a State court shall not
21   be granted with respect to any claim that was adjudicated on the
     merits in State court proceedings unless the adjudication of the
22   claim -

23               (1) resulted in a decision that was contrary to, or involved
     an unreasonable application of, clearly established Federal law, as
24   determined by the Supreme Court of the United States; or

25               (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
26   State court proceeding.

27   For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

28   of the United States Supreme Court at the time of the last reasoned state court decision.

4

1    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, ___ U.S.

2    ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing

3    Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in

4    determining what law is clearly established and whether a state court applied that law

5    unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir.

6    2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of

7    Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not

8    announced."  Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013) (citing

9    Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to

10   "determine whether a particular rule of law is so widely accepted among the Federal Circuits that

11   it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts

12   of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly

13   established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

14        A state court decision is "contrary to" clearly established federal law if it applies a rule

15   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

16   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

17   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

18   writ if the state court identifies the correct governing legal principle from the Supreme Court's

19   decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]  Lockyer v.

20   Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

21   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

22   court concludes in its independent judgment that the relevant state-court decision applied clearly

23   established federal law erroneously or incorrectly.  Rather, that application must also be

24   unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

25   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

---

26   [1]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28   384 F.3d 628, 638 (9th Cir. 2004)).

1   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

2   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

3   'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

4   Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

5   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

6   must show that the state court's ruling on the claim being presented in federal court was so

7   lacking in justification that there was an error well understood and comprehended in existing law

8   beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

9        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

10   court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

11   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

12   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

13   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

14   de novo the constitutional issues raised.").

15        The court looks to the last reasoned state court decision as the basis for the state court

16   judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

17   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

18   previous state court decision, this court may consider both decisions to ascertain the reasoning of

19   the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

20   federal claim has been presented to a state court and the state court has denied relief, it may be

21   presumed that the state court adjudicated the claim on the merits in the absence of any indication

22   or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption

23   may be overcome by a showing "there is reason to think some other explanation for the state

24   court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

25   (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but

26   does not expressly address a federal claim, a federal habeas court must presume, subject to

27   rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___,

28   ___, 133 S. Ct. 1088, 1091 (2013).

1   Where the state court reaches a decision on the merits but provides no reasoning to

2   support its conclusion, a federal habeas court independently reviews the record to determine

3   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

4   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

5   review of the constitutional issue, but rather, the only method by which we can determine whether

6   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

7   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

8   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

9   A summary denial is presumed to be a denial on the merits of the petitioner's claims.

10   Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

11   just what the state court did when it issued a summary denial, the federal court must review the

12   state court record to determine whether there was any "reasonable basis for the state court to deny

13   relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories ... could

14   have supported, the state court's decision; and then it must ask whether it is possible fairminded

15   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

16   decision of [the Supreme] Court."  Id. at 786.  The petitioner bears "the burden to demonstrate

17   that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d

18   925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

19   When it is clear, however, that a state court has not reached the merits of a petitioner's

20   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

21   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

22   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

23   **III.  Petitioner's Claims**

24   **A.  Fourth Amendment**

25   Petitioner's first claim for federal habeas relief is that the state trial court violated his

26   Fourth Amendment right to be free from unreasonable searches and seizures when it denied his

27   /////

28   /////

7

1   motion to suppress evidence of the drugs found in his home.  (ECF No. 1 at 6-8.) [2]  He argues that

2   the search of his apartment, which was conducted without a warrant, could not be justified under

3   the exigent circumstances exception to the search warrant requirement.  (Id.)  The California

4   Court of Appeal rejected this argument advanced by petitioner on appeal, finding that "the

5   exigent circumstances with which the deputy was presented here justified the warrantless entry."

6   Baskin, 2012 WL 5397110, at *2.

7        The United States Supreme Court has held that "where the State has provided an

8   opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

9   granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

10  search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  There

11  is no evidence before this court that petitioner was not provided a full and fair opportunity to

12  litigate his Fourth Amendment claims in state court.  On the contrary, as explained by the

13  California Court of Appeal, petitioner filed a motion to suppress evidence seized from his home

14  during his pretrial proceedings and received a hearing in the trial court on that motion.  Because

15  petitioner had a fair opportunity to and did, in fact, litigate his Fourth Amendment claims in state

16  court, his Fourth Amendment claim is barred from consideration in this federal habeas

17  proceeding.  Stone, 428 U.S. at 494.

18        **B.  Ineffective Assistance of Appellate Counsel**

19        In his second claim for federal habeas relief, petitioner argues that his appellate counsel

20  rendered him ineffective assistance in failing to raise the following two arguments on appeal:

21  "(1) that the people failed to establish the unavailability of an absent witness before using hearsay

22  statements of that witness to obtain petitioner's conviction; (2) that the prosecutor in closing

23  argument made inflammatory and prejudicial statements to the jury regarding Ms. Cekic's baby

24  being left with strangers, but the issues of child endangerment had nothing to do with whether

25  petitioner possessed the drugs at issue for the purpose of sales or furnishing heroin to Ms. Cekic."

26  (ECF No. 1 at 11.)  After setting forth the applicable legal principles below, the court will address

27

28  [2]   Page number citations such as this one are to the page numbers reflected on the court's
    CM/ECF system and not to page numbers assigned by the parties.

1    petitioner's arguments in turn below.

2                          **1. Applicable Legal Principles**

3           The clearly established federal law governing ineffective assistance of counsel claims is

4    that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

5    succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

6    deficient and that (2) the "deficient performance prejudiced the defense."  Id. at 687.  Counsel is

7    constitutionally deficient if his or her representation "fell below an objective standard of

8    reasonableness" such that it was outside "the range of competence demanded of attorneys in

9    criminal cases."  Id. at 687–88 (internal quotation marks omitted).

10          Reviewing courts must "indulge a strong presumption that counsel's conduct falls within

11   the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  There is in

12   addition a strong presumption that counsel "exercised acceptable professional judgment in all

13   significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

14   Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give

15   the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

16   possible reasons [defense] counsel may have had for proceeding as they did."  Cullen v.

17   Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and

18   alterations omitted).

19          The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v.

20   Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

21   However, an indigent defendant "does not have a constitutional right to compel appointed counsel

22   to press nonfrivolous points requested by the client, if counsel, as a matter of professional

23   judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).

24   Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of

25   counsel to present the client's case in accord with counsel's professional evaluation would be

26   "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998)

27   (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even

28   particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless

                                                        9

1   arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of

2   deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a

3   weak issue.  See Miller, 882 F.2d at 1434.  Under these standards, "it is difficult to demonstrate

4   that counsel was incompetent."  Smith v. Robbins, 528 U.S. 259, 288 (2000).  In order to

5   establish prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he

6   probably would have prevailed on appeal.  Miller, 882 F.2d at 1434 n.9.

7                  **2.  Erroneous Admission into Evidence of Witness' Hearsay Statements**

8          Petitioner argues that his appellate counsel rendered ineffective assistance in failing to

9   raise the argument on appeal that the admission into evidence of the statements of Marie Mayfield

10  through the testimony of Deputy Todd Hengel violated his rights under the Confrontation Clause.

11  (ECF No. 1 at 11-12.)  Specifically, petitioner asserts that his appellate counsel should have

12  argued the prosecution failed to establish that Ms. Mayfield was unavailable as a live witness.

13         Petitioner explains that "the defense" (presumably referring to his trial counsel and the

14  defense investigator) attempted to contact Ms. Mayfield because she "was believed to have

15  contact information of a second witness who would be exculpatory in this matter."  (Id. at 11.)

16  According to petitioner, after his trial counsel made several unsuccessful attempts to contact

17  Mayfield, the prosecutor provided petitioner's trial counsel with Mayfield's updated address and

18  telephone number.  A defense investigator went to the new address but was still unable to locate

19  Mayfield.  (Id.)  The defense investigator also left a telephone message for Mayfield but never

20  received a response.  (Id.)  The defense investigator later attempted again to interview Ms.

21  Mayfield but was unable to do so.  (Id. at 12.)  At some point, the prosecutor informed

22  petitioner's counsel that Mayfield was "at the address provided on an infrequent basis."  (Id.)  It

23  also appears from an exhibit filed by petitioner with this court that his trial counsel requested a

24  continuance of petitioner's trial in order to attempt to locate Mayfield prior to trial.  (Id. at 39-41.)

25  Petitioner claims that "the people never did produce witness Mayfield, and her hearsay statements

26  were allowed to be admitted into evidence via Deputy Hengel – in violation of petitioner's

27  Constitutional Rights to Confront and Cross-examine witnesses who has previously made

28  statements to law enforcement and would be called to testify at trial to attest ot [sic] deny the

1   hearsay statements."  (ECF No. 1 at 12.)

2          It appears from these allegations that petitioner may be complaining that the prosecution

3   failed to locate and produce Ms. Mayfield as a trial witness and that if the prosecution had done

4   so it would have allowed the defense to question her about her statement to Mr. Shutler that she

5   saw Ms. Cekic go into petitioner's apartment.  Petitioner may also be attempting to claim that the

6   prosecution improperly failed to give the defense team sufficient information through discovery

7   to enable petitioner's trial counsel to locate Ms. Mayfield prior to trial.  However, petitioner has

8   failed to demonstrate that either of these claims of prosecutorial misconduct would have prevailed

9   on appeal had they been raised by appellate counsel.  Accordingly, it cannot be said that

10  petitioner's appellate counsel rendered ineffective assistance in failing to pursue these arguments.

11  Strickland, 466 U.S. at 687-88.

12         Petitioner has also failed to demonstrate that his appellate counsel rendered ineffective

13  assistance in failing to raise a challenge to the admission of Deputy Hengel's testimony based on

14  the Confrontation Clause.

15         In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme Court held

16  that the Confrontation Clause bars the state from introducing into evidence out-of-court

17  statements which are "testimonial" in nature unless the witness is unavailable and the defendant

18  had a prior opportunity to cross-examine the witness, regardless of whether such statements are

19  deemed reliable.  It has been recognized that "[a] witness is not 'unavailable' for purposes of the

20  foregoing exception to the confrontation clause requirement unless the prosecutorial authorities

21  have made a good-faith effort to obtain his presence at trial."  Merolillo v. Yates, 663 F.3d 444,

22  454 (9th Cir. 2011) (quoting  Barber v. Page, 390 U.S. 719, 724-25 (1968)).  "If the state does not

23  make any effort to secure the witness's attendance, the good faith requirement has not been met

24  and the witness is not legally unavailable."  Whelchel v. Washington,  232 F.3d 1197, 1209 (9th

25  Cir. 2000) (citing Christian v. Rhode, 41 F.3d 461, 467 (9th Cir.1994)).

26         In addition, Confrontation Clause violations are subject to harmless error analysis.

27  Whelchel, 232 F.3d at 1205-06.  "In the context of habeas petitions, the standard of review is

28  whether a given error 'had substantial and injurious effect or influence in determining the jury's

1    verdict.'" Christian v. Rhode, 41 F.3d 461, 468 (9th Cir. 1994) (quoting Brecht v. Abrahamson,

2    507 U.S. 619, 637 (1993)).  Factors to be considered when assessing the harmlessness of a

3    Confrontation Clause violation include the importance of the testimony, whether the testimony

4    was cumulative, the presence or absence of evidence corroborating or contradicting the

5    testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's

6    case.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); United States v. Norwood, 603 F.3d

7    1063, 1068-69 (9th Cir. 2010).

8            It appears from petitioner's allegations that neither the defense nor the prosecution was

9    able to locate Ms. Mayfield prior to petitioner's trial.  It also appears that while the prosecution

10   was able to obtain an updated address for Ms. Mayfield which it shared with the defense, she was

11   at that location only infrequently and did not return phone calls.  If proven, these allegations

12   support an inference that Mayfield was simply not available as a trial witness.  Petitioner has

13   failed to come forward with any evidence suggesting that the prosecution failed to make an effort

14   to locate Mayfield and secure her attendance as a trial witness.  However, even assuming

15   arguendo that the prosecution failed to make a reasonable good faith effort to obtain Mayfield's

16   presence at petitioner's trial, any error stemming from the admission of Deputy Hengel's

17   testimony regarding her statements to him was harmless.

18           At petitioner's trial Deputy Hengel testified that when he arrived at the scene he spoke

19   with Randy Shutler, who told him that he had spoken with a "black female" (Mayfield), who had

20   reported to him that she saw the mother of the infant go into apartment No. 4.  (Reporter's

21   Transcript on Appeal (RT) at 186-87.)  Deputy Hengel testified that he then spoke with Mayfield

22   in an attempt "to try and get the same information from her regarding the whereabouts of the

23   mother."  (Id. at 187.)  Hengel testified that Mayfield told him petitioner resided in apartment No.

24   4.  (Id. at 187-88.)  Hengel also testified that he verified with the apartment manager that

25   petitioner resided in apartment No. 4.  (Id. at 189.)  According to Hengel's testimony, he then

26   entered the apartment with several other officers and found petitioner and Cekic.  (Id. at 191-92.)

27           Mayfield's statements to Shutler and Deputy Hengel regarding the whereabouts of the

28   infant's mother were primarily relevant to petitioner's argument that under the Fourth

                                              12

1    Amendment the police did not have probable cause to enter his apartment without a warrant.

2    That issue was resolved against petitioner prior to trial.  Mayfield's statements to Deputy Hengel

3    had very little, if any, relevance to the question whether petitioner was actually guilty of the

4    crimes of possession and furnishing methamphetamine and heroin.  Further, Mayfield's purported

5    statements to Shutler that petitioner resided in apartment No. 4 and that the infant's mother was

6    also in that apartment were corroborated when Deputy Hengel entered the apartment and

7    encountered both petitioner and Cekic.  Finally, it appears that in all likelihood Deputy Hengel

8    would have entered apartment No. 4 even without speaking to Mayfield, based on his

9    conversation with Shutler.  Shutler testified at petitioner's trial and was cross-examined by

10   petitioner's counsel.  (Id. at 125, 138.)  Under all of these circumstances, petitioner has failed to

11   show that any arguable Confrontation Clause violation in admitting Mayfield's statements into

12   evidence through the testimony of Deputy Hengel had substantial and injurious effect or influence

13   in determining the jury's verdict in his case.

14         Given these weaknesses in petitioner's underlying Confrontation Clause argument, his

15   appellate counsel cannot be said to have rendered him ineffective assistance in failing to raise the

16   issue on appeal.   Appellate counsel's decision to press claims with arguably more merit than the

17   Confrontation Clause claim now suggested by petitioner was well "within the range of

18   competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759,

19   771 (1970).  See also Robbins, 528 U.S. at 288 ("appellate counsel who files a merits brief need

20   not (and should not) raise every nonfrivolous claim, but rather may select from among them in

21   order to maximize the likelihood of success on appeal"); Gray v. Greer, 800 F.2d 644, 646 (7th

22   Cir. 1985) ("Generally, only when ignored issues are clearly stronger than those presented, will

23   the presumption of effective assistance of counsel be overcome").  The state courts' rejection of

24   petitioner's ineffective assistance of appellate counsel claim is not contrary to or an unreasonable

25   application of Strickland.  Accordingly, petitioner is not entitled to federal habeas relief with

26   respect to that claim.

27   /////

28   /////

### 3.   Claim of Prosecutorial Misconduct

Petitioner also argues that his appellate counsel should have argued on appeal that the prosecutor at petitioner's trial committed misconduct during closing argument when the prosecutor commented on evidence that Cekic left her infant with Shutler and Higginbothom while she attempted to obtain drugs.  Petitioner argues "the issues of child endangerment had nothing to do with whether petitioner possessed the drugs at issue." (ECF No. 1 at 12.)  Petitioner contends the prosecutor's statements in this regard were "inflammatory and prejudicial."  (Id.)  He argues, "[o]bviously, the jury would be influenced and inflamed soon as they heard about Ms. Cekic leaving her baby (with other adults labeled as strangers) outside, or evidence of the baby in the fact-pattern at all, had little or no probative value; which would be substantially outweighed by the danger of undue prejudice."  (Id.)

The exact language used by the prosecutor during closing arguments to which petitioner now objects is as follows:

> But what reason would she have to come and lie to you in this trial? She's already the one in prison.  You heard it from her.  She didn't get any deals.  She is in prison.  Moreover, she's in an addiction facility.  She's trying to deal with her addiction, as she told us.
>
> She brought over a baby.  She needed it so bad she was willing to strand her baby with somebody.

(RT at 417.)

> She's so honest about everything else, honest about lying, she's honest about the fact she's in prison.
>
> * * *
>
> Does that sound like somebody who is putting up for the mother-of-the year award like they are worried that these are the things that are going to allow them somehow to get a child back, but, "Oh, if I say I brought the heroin, that's it.  That's it.  End of story.  Can't get my kid back because I said that.
>
> * * *
>
> The best they could come up with why she was going to lie was because she was worried about family court proceedings?  She's in prison, ladies and gentlemen.  You don't keep your child while you're in prison.  So it's not as if she's worried about it being removed from her.

1    (Id. at 451.

2              It's really a common sense story at the end of the day.  It doesn't
             take much to figure out what happened on the early morning hours
3              of December 30th, 2009.  The person with an addiction was having
             a fight with their boyfriend, had their baby screaming at the top of
4              their lungs, needed some drugs.

5    (Id. at 422.)

6         Prior to trial, petitioner's counsel filed a written motion in limine seeking to "exclude

7    evidence of Ms. Cekic's baby being present or left outside."  (Clerk's Transcript on Appeal (CT)

8    at 231.)  Petitioner's trial counsel argued that such evidence would "inflame" the jury and was

9    irrelevant to whether petitioner was guilty of the charged crimes.  (Id.)  The motion in limine was

10   denied by the trial court.  (RT at 40-48.)  During closing argument, the prosecutor made the

11   remarks set forth above in an attempt to counter the theory presented by the defense that Cekic

12   was a drug dealer who supplied petitioner with heroin, rather than the other way around.

13   Moreover, petitioner's trial counsel did not object to these portions of the prosecutor's closing

14   argument when they were made.

15        Under California law, trial counsel must make a timely objection in order to preserve a

16   claim of prosecutorial misconduct on appeal.  People v. Samayoa, 15 Cal.4th 795, 841 (1997).

17   The California Supreme Court has noted that "[a]s a general rule a defendant may not complain

18   on appeal of prosecutorial misconduct unless in a timely fashion – and on the same ground – the

19   defendant made an assignment of misconduct and requested that the jury be admonished to

20   disregard the impropriety."  Id.  In this case, an argument on appeal based upon prosecutorial

21   misconduct in closing argument would not have prevailed because petitioner's trial counsel did

22   not make a contemporaneous objection to the challenged portions of the prosecutor's closing

23   argument.

24        Even if this issue had been properly preserved for appeal, petitioner has failed to show

25   that the prosecutor's statements in closing argument were prejudicial.  In fashioning closing

26   arguments prosecutors are allowed "reasonably wide latitude," United States v. Birges, 723 F.2d

27   666, 671-72 (9th Cir. 1984), and are free to argue "reasonable inferences from the evidence."

28   United States v. Gray, 876 F.2d 1411, 1417 (9th Cir. 1989).  See also Ducket v. Godinez, 67 F.3d

1   734, 742 (9th Cir. 1995).  "[Prosecutors] may strike 'hard blows,' based upon the testimony and

2   its inferences, although they may not, of course, employ argument which could be fairly

3   characterized as foul or unfair."  United States v. Gorostiza, 468 F.2d 915, 916 (9th Cir. 1972).

4   "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally

5   condemned.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted).  The issue is

6   whether the "remarks, in the context of the entire trial, were sufficiently prejudicial to violate

7   [petitioner's] due process rights."  Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974); Deck v.

8   Jenkins, 768 F.3d 1015, 1021 (9th Cir. 2014); United States v. Robinson, 485 U.S. 25, 33 (1988)

9   ("[P]rosecutorial comment must be examined in context. . . .")

10          Here, it appears that the prosecutor was merely attempting to counter the defense's

11   contention that Cecik, and not petitioner, was the drug supplier in this situation.  The challenged

12   portion of the prosecutor's closing argument constituted a reasonable inference from the evidence

13   presented at trial that Cecik was the purchaser and consumer of the drugs, as opposed to the

14   supplier, as evidenced by the fact that she was even willing to leave her baby with strangers in her

15   search for narcotics.  In addition, as noted by respondent, the  jury at petitioner's trial was

16   instructed that "nothing that the attorneys say is evidence," and that "[i]n their opening statements

17   and their closing arguments, the attorneys will discuss the case, but their remarks are not

18   evidence."  (RT at 383.)  These instructions would have mitigated any possible prejudice flowing

19   from the prosecutor's remarks even if they did evidence prosecutorial misconduct in some way.

20   See Kansas v. Marsh, 548 U.S. 163 (2006); Richardson v. Marsh, 481 U.S. 200, 206 (1987)

21   (applying "the almost invariable assumption of the law that jurors follow their instructions");

22   Fields v. Brown, 503 F.3d 755, 782 (9th Cir. 2007).

23          Petitioner also argues that the prosecutor's statement to the jury that, "what reason would

24   she have to come and lie to you in this trial" was improper and vouched for the credibility of Ms.

25   Cekic's testimony.  (ECF No. 1 at 13-14; ECF No. 15 at 10.)  "Vouching consists of placing the

26   prestige of the government behind a witness through personal assurances of the witness's

27   veracity, or suggesting that information not presented to the jury supports the witness's

28   testimony."  United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993).  "Vouching

1   typically involves the prosecution bolstering the testimony of its own witness." United States v.

2   Nobari, 574 F.3d 1065, 1078 (9th Cir. 2009.  It is improper for a prosecutor to vouch, in the sense

3   described above, for the credibility of a government witness.  United States v. Hermanek, 289

4   F.3d 1076, 1098 (9th Cir. 2002).  See also United States v. Young, 470 U.S. 1, 7 n.3 (1985).

5          The undersigned does not find that the prosecutor's statement during closing argument

6   "what reason would she have to come and lie to you in this trial" constituted improper vouching

7   for the prosecution's witness.  This brief remark did not place the prestige of the government

8   behind Cekic's testimony through the prosecutor's personal assurances of her veracity, nor did it

9   suggest that information not presented to the jury supported Cekic's testimony.

10          For all of the reasons set forth above, petitioner's appellate counsel did not render

11   ineffective assistance in choosing to raise arguments on appeal that he believed had more merit

12   than the claims of prosecutorial misconduct now being suggested by petitioner.  See McMann,

13   397 U.S. at 771; Robbins, 528 U.S. at 288.  The decision of the California courts to the same

14   effect is not contrary to or an unreasonable application of federal law.  Accordingly, petitioner is

15   not entitled to federal habeas relief with respect to this aspect of his ineffective assistance of

16   counsel claim.

17   **IV.  Conclusion**

18          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

19   application for a writ of habeas corpus be denied.

20          These findings and recommendations are submitted to the United States District Judge

21   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22   after being served with these findings and recommendations, any party may file written

23   objections with the court and serve a copy on all parties.  Such a document should be captioned

24   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25   shall be served and filed within fourteen days after service of the objections.  Failure to file

26   objections within the specified time may waive the right to appeal the District Court's order.

27   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

28   1991).  In his objections petitioner may address whether a certificate of appealability should issue

1   in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing

2   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

3   enters a final order adverse to the applicant).

4   Dated:  June 3, 2015

5

6                                                                              _____
                                                                               DALE A. DROZD
7                                                                              UNITED STATES MAGISTRATE JUDGE

8   DAD:8:
    Baskin685.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28